**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

CARDINAL HEALTH, INC.,          .
                    Plaintiff,     .
vs.                              .   Docket No. CV 12-185
                                 .
ERIC H. HOLDER, JR., et al.,     .   Washington, D.C.
                                 .   Monday, February 13, 2012
                    Defendants.    .
. . . . . . . . . . . . . . . .   .


TRANSCRIPT OF MOTIONS HEARING

BEFORE THE HONORABLE JUDGE REGGIE B. WALTON

UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:    Randolph D. Moss, Esquire
                      Brian M. Boynton, Esquire
                      WILMER HALE
                      1875 Pennsylvania Avenue, NW
                      Washington, D.C. 20006

                      Douglas B. Farquhar, Esquire
                      HYMAN, PHELPS & McNAMARA, P.C.
                      700 Thirteenth Street, N.W., Suite 1200
                      Washington, D.C. 20005

                      Craig S. Morford, Esquire
                      CARDINAL HEALTH
                      7000 Cardinal Place
                      Dublin, OH 43017

1   APPEARANCES:  [Cont'd]

2   For the Defendant:  C. Lee Reeves, Esquire
                        Laura Eddleman Heim, Esquire
3                       Arthur R. Goldberg, Esquire
                        U.S. DEPARTMENT OF JUSTICE
4                       Civil Division
                        20 Massachusetts Avenue, N.W.
5                       Washington, D.C. 20530

6                       Dedra S. Curteman, Esquire
                        Larry P. Cote, Esquire
7                       U.S. DEPARTMENT OF JUSTICE
                        Drug Enforcement Administration
8                       Office of Chief Counsel
                        8701 Morissette Drive
9                       Springfield, VA 22152

10

11  Court Reporter:  Cathryn J. Jones, RPR
                     Official Court Reporter
12                   Room 6521, U.S. District Court
                     333 Constitution Avenue, N.W.
13                   Washington, D.C. 20001

14

15

16

17  Proceedings recorded by machine shorthand, transcript
    produced by computer-aided transcription.
18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

THE DEPUTY CLERK:  Cardinal Health versus Eric

Holder, et al, Civil Action number 12-185.  Counsel, please

come forward and identify yourself for the record.

MR. MOSS:  Good afternoon, Your Honor.  Randolph

Moss for Cardinal Health.  With me today is Craig Morford,

Chief Legal officer with Cardinal Health, Brian Boynton from

Wilmer Hale and Douglas Farquhar from Hyman, Phelps and

McNamara.

THE COURT:  Good afternoon.

MR. REEVES:  Your Honor, good afternoon, Lee

Reeves for the government.  With me at counsel table are

Arthur Goldberg and Laura Heim from DOJ.  Larry Cote of DEA

and Dedra Curteman also of DEA.

THE COURT:  Good afternoon.  This matter is before

me after having previously been presented to me on a motion

for a temporary restraining order.  The matter now is before

me on a hearing -- well, for a preliminary injunction

hearing, but also on the issue as to whether I will permit

testimony to be presented by a witness on behalf of the

government.

One issue I want to raise with counsel which I see

of significance is what information can I consider in

deciding whether the order issued by the DEA was arbitrary

and capricious.  What information do I consider, just the

1    information contained in the order itself?  Or can I and

2    should I consider any other information that purportedly

3    supports the action that was taken by the DEA?

4           MR. REEVES:  Judge Walton, the relevant record is

5    the evidence before the administrator on the date she issued

6    her decision which was February 2nd, 2012.

7           THE COURT:  At this point all I know is what's in

8    the order itself.  So you're saying that's the only thing I

9    can consider in deciding whether the actions were arbitrary

10   and capricious?

11          MR. REEVES:  The information in the ISO, Your

12   Honor?

13          THE COURT:  Yes.

14          MR. REEVES:  No, Your Honor, the ISO is only a

15   summary document that is intended to provide just a

16   description of the allegations.  It is not intended to be an

17   exhaustive factual recitation.  And for that proposition we

18   rely on the regulation 21 CFR 1301.37(c).  There is simply

19   nothing in the statute or the regulations that requires an

20   exhaustive factual recitation in the ISO.

21          THE COURT:  I understand that, but this is an APA

22   challenge.  And generally absent several limited exceptions

23   the Court is restricted to considering what the

24   administrative record is.  Here, there really isn't any

25   administrative record, so the only thing when the matter was

1    presented to me by the plaintiffs that I had was the order

2    itself.

3              MR. REEVES:  Your Honor, the relevant,

4    administrative record for these judicial proceedings are the

5    evidence before the administrator on the date of the ISO and

6    that is the purpose for which we are offering

7    Mr. Rannazzisi's testimony.

8              THE COURT:  Okay.  Response?

9              MR. MOSS:  Your Honor, the law is clear on this,

10   the relevant record is the record that is contained in the

11   ISO.  And the ISO or Immediate Suspension Order has to stand

12   or fall on its own.

13             THE COURT:  What says that?

14             MR. MOSS:  The United States, Your Honor, a moment

15   ago cited to a regulation.  They cited to 21 CFR 1301.37

16   (c).  And they say that is the regulation that says that

17   they only need to make, to make a summary of what the basis

18   for acting.  But what they don't cite, Your Honor -- I

19   should say that provision Your Honor deals with orders to

20   show cause.  Those are the initiation of an administrative

21   proceeding in front of an administrative law judge where

22   notice pleading makes sense.

23             But when you're dealing with an ISO, an Immediate

24   Suspension Order given the fact that the agency is actually

25   acting at that point in time, it actually has to have made

1   its findings at that point in time.  And there's a separate

2   regulation that deals with that and that is 21 CFR Section

3   1301.36(e).  And that provision states clearly that the ISO

4   has to include a statement of his findings regarding the

5   danger to public health and safety.  And that makes enormous

6   sense where an agency is going to act in a way that has

7   dramatic consequences, is going to act without providing a

8   party with an opportunity to be heard.  It has to make its

9   findings and it has to do so in its documents.

10          THE COURT:  Why doesn't what's in the order itself

11  make that showing?  Because asserting the large amount of

12  drugs that were being dispensed in and of itself they

13  indicate, suggest that there was diversion taking place

14  which obviously does create a danger.

15          MR. MOSS:  Your Honor, I think that if the hearing

16  is in the Court's review is limited to the ISO as we submit

17  as a matter of settled law it has to be, that the agency has

18  not come close to carrying its heavy burden of demonstrating

19  immediate or imminent danger to public health or safety.

20          They site to four stores in that order.  Two of

21  those stores Cardinal Health on its own cut off before the

22  DEA even served on Cardinal Health its administrative

23  inspection warrant, long before the ISO in this case issued.

24  The other two stores are the two CVS stores in Stanford,

25  Florida.  As to those stores the day after Cardinal Health

1  was served with its administrative inspection warrant in

2  Florida it sent a letter to the DEA and said tell us if

3  there are any other stores out there, any stores that you

4  believe are engaged in diversion tell us who they are --

5          THE COURT:  Is that relevant for my consideration

6  what occurred after the order was issued?

7          MR. MOSS:  Your Honor, I think it is because this

8  is actually something that happened before the order issued.

9  What happened before the order issued -- I'm sorry.  Your

10  Honor, what is relevant is is that before the agency's order

11  issued, Cardinal Health on October 26th, wrote to DEA and

12  said if there's another store out there or other stores out

13  there that you believe are engaged in diversion tell us who

14  they are and we will stop distributing controlled substances

15  to those stores.

16          Then again in December counsel for Cardinal Health

17  again sent an email to the DEA reiterating this thing tell

18  us if you think there's anyone out there that's a risk of

19  diversion.  And if they are we will stop selling to those

20  stores.  That was all before the agency made its decision.

21          All that happened after the agency made its

22  decision is Cardinal Health was true to its word.  And as

23  soon as it got the decision the first notice from the DEA

24  that the DEA believed that those two stores were engaged in

25  diversion as soon as it received that word it did what it

1  had promised before the DEA issued its decision and it

2  stopped making sales to those stores.

3          THE COURT:  But I would only have knowledge of

4  what you just articulated if I permit that information by

5  way of I assume declarations or affidavits to come before

6  me, right?

7          MR. MOSS:  Well, Your Honor, I think that it is

8  true that it is an event that occurred -- the actual

9  stopping of the sales to those stores occurred after the

10  order issued.  In that sense --

11          THE COURT:  But even the willingness that you say

12  your client expressed about not distributing to the stores

13  that only comes before me if I permit either affidavits or

14  declarations to be made part of the record?

15          MR. MOSS:  But, Your Honor, the company --

16          THE COURT:  That's not contained in the four

17  corners of the orders.

18          MR. MOSS:  I understand, Your Honor, but it is

19  something that was presented to the agency.  It was before

20  the agency was -- and we were actually told it was before

21  the letter was presented to the administrator.

22          THE COURT:  I understand, but I'm saying I hear

23  you articulating that, but I think in order for me to

24  consider it as a part of what record was before the agency I

25  would need to authorize that the declarations in reference

1   to that be made a part of the record.

2            MR. MOSS:  I think that's correct, Your Honor.

3            THE COURT:  If I do that then don't I have to give

4   the government the opportunity to present by way of

5   declarations or otherwise what their position is about what

6   the circumstances were at the time the order was issued to

7   show why they felt the order had to be issued?

8            MR. MOSS:  I don't think so, Your Honor.  I don't

9   think the fact that we have shown one simple fact which is

10  an uncontested fact.  It is a fact that is a matter of

11  administrative record that these stores in fact were

12  terminated, were suspended, opens the door up for the DEA to

13  then come in and engage in a post hoc process and say let us

14  now tell you what our rationalization is.

15           We find ourselves in a situation here, Your

16  Honor -- ultimately this is a due process case and the

17  statute embodies due process.  We find ourselves in a

18  position in which we repeatedly requested an opportunity to

19  come in and meet with the DEA.  We wanted to come in and

20  talk with them about this.  We asked tell us if there is

21  somebody we should cut off and we will do it.  We were

22  rebuffed.  We were not given that opportunity.  We then get

23  the Immediate Suspension Order served on us.

24           We immediately do what we've said we would do and

25  what was before the administrator beforehand and stop

1    selling to those two stores.  The DEA cannot come into court

2    today and doesn't come into court and say distribution from

3    those stores presents a risk to the public.  But that fact

4    and that we did doesn't undermine the fundamental tenants of

5    administrative law that the agency and where the agency

6    provides a contemporaneous explanation for its decision, the

7    validity of that decision has to rise or fall based on the

8    explanation the agency gave in its decision.  The

9    regulations are clear that the agency had to give its

10   explanation in the decision in cases like *Chenery*, *Camp*,

11   *State Farm*, the DC Circuit decision in the *CCNV* case, all

12   make clear that the agency doesn't get to come back with

13   post-hoc rationalizations for its decision.

14          We get served on Friday night after 11:30 p.m.

15   with this voluminous filing that says this is actually what

16   at least the people who are making recommendations to the

17   administrator were considering.  We don't even know that

18   this is what the administrator herself considered.  It

19   really, it unfetters administrative law if the agency

20   process breaks down to a point where an agency, where it's

21   taking a Draconian action against a company and it's cutting

22   this company off and by its own regulations have to state

23   its finding and then comes in and gives new findings.

24          We're happy to deal with and address those

25   findings and as long as the record in this case is limited

1   to addressing the findings that are in that order.  If the

2   Court has to go somewhat beyond the formal administrative

3   record, given the fact that we were never given an

4   opportunity to actually appear or make a record in the case

5   we're okay with that, but what we're not okay with is when

6   it goes beyond the findings.  And those findings, the only

7   findings that are in that order, the only findings by which

8   the, that order has to stand or die is the finding that

9   there are four stores in which Cardinal Health distributed

10  very large quantities of oxycodone.

11          We can address the substance of those allegations.

12  And I actually think even with respect to those allegations

13  there's no serious question here given the fact that

14  Cardinal Health itself cut off two of those stores long ago.

15  And the other two of the stores not only did it suspend the

16  sales as soon as the agency did what we asked and said yes,

17  there's a problem with these stores.  But even before then,

18  Your Honor, CVS responded, CVS cut off itself 22 doctors

19  whose prescriptions were being filled at those stores that

20  accounted for 64 percent of the sales.  And over the last

21  three months before the agency acted the amount of oxycodone

22  that was distributed to those stores fell by more than 80

23  percent.

24          You know, it is a high burden both as a matter of

25  due process as well as the statute for the agency to come in

1    and say we want to close that store down.  It is, it's sort

2    of adding insult to injury in a world of due process for

3    them not to actually make findings that are sufficient to

4    sustain this Draconian action that they are taking.  And

5    then come in after the fact and say well even though our

6    regulations require us to make the findings in the order

7    itself we're now going to come in on a Friday night at

8    11:30 p.m., going to serve on you a stack of materials in

9    which we tell you what we think.

10                 And I should say, Your Honor, there's a good

11   reason for this rule of administrative law and the reason

12   that the agency's decision has to stand or fall based on

13   what's in the administrative decision itself.  Because once

14   an agency gets into court it's no longer acting as a neutral

15   arbitrator.  It's acting as an advocate.  And when you read

16   through those papers, which we disagree with strenuously,

17   there is an enormous amount of advocacy in those papers.

18   They are not papers of a dispassionate administrative

19   agency.  They are papers of litigants who are trying to win

20   a case.  And they're coming in after the fact and they're

21   making arguments of which, you know, as we've indicated at

22   least in part in the papers that we were able to pull

23   together over the weekend we think are fundamentally wrong.

24                 We look forward to the opportunity to respond to

25   that in the administrative proceeding, but as a matter of

1   due process the agency doesn't get to do it this way where

2   they come in and they suspend you.  They have inadequate

3   findings in their decision itself and then they come along

4   afterwards in litigation and say well, here's our rationale.

5           THE COURT:  From what I'm being told by

6   plaintiff's counsel why isn't that convincing?

7           MR. REEVES:  Your Honor, at no point does Mr. Moss

8   acknowledge that the ISO itself expressly references

9   violations of the 2008 Memorandum of Agreement which

10  requires Lakeland to enact anti-diversion measures that were

11  adequate generally.  I mean the Memorandum of Agreement had

12  nothing whatsoever to do with these four pharmacies.  What

13  it had to do with was Lakeland's failure to maintain

14  effective controls against diversion generally.

15          So Mr. Moss talks all about its recent compliance

16  efforts for these four stores.  But that doesn't negate the

17  fact that DEA has concerns that a major supplier of

18  controlled substances in a geographic area of the country

19  where diversion is at the worst in Florida.  This is a

20  supplier with a demonstrated track record of problems.  Its

21  2007 suspension was based on hydrocodone distribution to

22  Internet retailers.  Its 2012 suspension was based on

23  oxycodone distribution to brick and mortar stores.

24          The common thread that runs between this is

25  Lakeland's inadequate anti-diversion measures.  That is why

1   the ISO itself references violations of the Memorandum of

2   Agreement.  That is why we want to offer Mr. Rannazzisi's

3   testimony to explain that in greater detail.  The finding of

4   the violation of the Memorandum Agreement is absolutely

5   contained in the ISO and that is all that is required.

6        Mr. Moss makes it sound like 1301.37(c) is only

7   about orders to show cause, but that's not the case.  It

8   also includes suspensions.  And he has provided no authority

9   that you shouldn't read this regulatory provision in

10  conjunction with the provision that he has cited.  If he is

11  right DEA has to work up its entire case before issuing an

12  824(d) suspension based on an imminent harm finding.

13  That's simply not the way Congress designed this to work.

14        So again, the record is the record.  Not that it

15  will be created down the road in the administrative process.

16  That's different.  The record that we want to talk about

17  here today is the record before the administrator at the

18  time she issued her decision on February 2nd.  That is why

19  we offered the testimony of Mr. Rannazzisi.  I'm certainly

20  mindful of --

21        THE COURT:  Whether I permit the testimony or the

22  affidavit whatever, is that going to be limited to what is

23  contained in the four corners of the ISO?

24        REEVES:  It will explain the basis for the finding

25  in the ISO among other findings that Cardinal Health

1   violated the 2008 Memorandum of Agreement.

2           THE COURT:  And that doesn't amount to a post hoc

3   explanation?

4           MR. REEVES:  Absolutely not.  It is expanding on a

5   binding that is in the ISO.  This is not a due process

6   concern contrary to what Mr. Moss has said.  And he has also

7   represented to this Court if DEA would just tell us who to

8   cut off we could fix all the problems.  Well, DEA can't do

9   that for one very important reason and that is the reason of

10  due process.  If DEA tells a distributor that a retailer is

11  a problem and they are cut off that, well that's a de facto

12  suspension without any process.  So that's the answer to the

13  question of why we can't just tell Cardinal or any

14  distributor who to cut off.

15          I'm happy to answer any other questions Your Honor

16  has at this point.

17          THE COURT:  Why wouldn't consideration of the

18  declaration be adequate?  Why do I need to hear his

19  testimony?

20          MR. REEVES:  We thought that under the press of

21  circumstances I know that Your Honor has to issue a decision

22  today because the TRO is going to expire today.  We thought

23  that if we were able to --

24          THE COURT:  I can extend the TRO.

25          MR. REEVES:  Well, we would ask that Your Honor

1    not do that based on the arguments that we made in our

2    briefs and the arguments we are prepared to make with or

3    without testimony.  But we thought under the press of

4    circumstances that hearing from Mr. Rannazzisi we could hit

5    the high points in 30 minutes about the basis for the

6    findings that are stated in the ISO.  We thought that would

7    be of assistance to the Court.

8            THE COURT:  It would be inconsistent with the rule

9    that says that normally in these types of situations the

10   Court should rely upon the declarations or affidavits and

11   not use live testimony absent some extraordinary

12   circumstances.

13           REEVES:  We thought it would be of assistance to

14   the Court.  I'm mindful of the fact that the Court was on

15   vacation last week, that we made voluminous filings.

16   Plaintiffs made voluminous filings and those filings

17   continued late this morning.  We thought that

18   Mr. Rannazzisi's testimony would help get to the heart of

19   the merits question before this Court; namely, whether DEA's

20   suspension decision was arbitrary and capricious based on

21   the information it had when it issued the ISO on

22   February 2nd.

23           THE COURT:  What about the declarations that they

24   seek to present that would I assume seek to rebut what your

25   deposition or declaration would provide for?

1          MR. REEVES:  In candor, Your Honor, those filings

2   only coming in this morning I have only skim some of them.

3   I don't know what all of them say.  Some of them are about

4   irreparable harm.  For instance, Mr. Giacomin's declaration

5   had nothing to do with it, that was before the

6   administrator.  But as to the remainder of the declarations

7   I simply can't, I'm not fluent enough to say exactly what

8   they fully contain.

9          THE COURT:  Well some of it I assume relates to

10  what he says occurred regarding his client and the DEA prior

11  to the issuance of the ISO.

12         MR. REEVES:  It may, Your Honor, I'm simply not

13  aware of that.

14         THE COURT:  If that's what it relates to would you

15  be opposed to that?

16         MR. REEVES:  We think that the Court should

17  appropriately consider the evidence that was before the

18  administrator that she could have considered at the time of

19  the decision.  Anything other than that we think is out of

20  bounds under the D.C. Circuit's decision in *Boswell Memorial*

21  *Hospital versus Heckler* from 1984.

22         THE COURT:  As I recall that case did not involve

23  a situation where the party was saying we sought to try and

24  present information to the agency that the agency would not

25  consider.

1          MR. REEVES:  No, Your Honor, it stands for the

2   general proposition that information that comes in after the

3   fact that wasn't before the agency is not properly

4   considered when evaluated in the propriety.

5          THE COURT:  But if the party takes the position we

6   tried to present this information to the agency, the agency

7   refused to accept it and therefore it would be unfair for us

8   not to be able to present that to show that the action taken

9   by the agency was arbitrary and capricious.

10          MR. REEVES:  Your Honor is correct, it's evidence

11   that the administrator could have considered as well as

12   evidence that she did consider.

13          THE COURT:  Okay.

14          MR. MOSS:  Your Honor, if I may?

15          THE COURT:  Briefly.

16          MR. MOSS:  Your Honor, the law is just I think

17   completely clear on this point.  The government says that it

18   relies on Section 1301.37 of the DEA regs which only

19   requires a summary.  That section is entitled, *Order to Show*

20   *Cause*.  There's a separate section of the regulations which

21   is entitled *Suspension or Revocation of Registration,*

22   *Suspension of Registration Pending Final Order, Extension of*

23   *Registration Pending Final Order*.  And in that section, in

24   Subsection (E) of that provision it says, "If the

25   administrator so suspends he or she shall serve the order to

1   show cause pursuant to Section 1301.37, an order of

2   immediate suspension which shall contain a statement of his

3   findings regarding the danger to public health or safety."

4          It is certainly not a finding with respect to the

5   danger to public health or safety to have just a general

6   conclusion.  The findings that are in the document with

7   respect to danger to public health or safety are the

8   findings with respect to the four stores.

9          Second point is cases like *Chenery*, *Camp*, *State*

10  *Farm* and *CCNV* are clear on this.  In *Camp* the Court said,

11  "The focal point for judicial review should be the

12  administrative record already in existence not some new

13  record made initially in a reviewing court."  In *Overton*,

14  the Court says, "An agency is bound by its formal findings

15  when they exists and cannot rely on affidavits that contain

16  post-hoc rationalizations."

17         As a matter of law, their findings had to exist.

18  If their findings did not exist then the order by itself is

19  invalid under their own regulations and has to be set aside.

20  And *Overton Park* says, "If there are findings in the order

21  then they have to rely on those and they can't go beyond

22  it."  They cite no case in opposition to this in their

23  briefing.  This is briefed somewhat Your Honor in the briefs

24  with respect to whether to permit the live testimony.  And

25  we cited these cases.  And in response they cite to a

1    handful of district court decisions from other jurisdictions

2    which simply allowed testimony but contained no analysis of

3    the administrative law principals, no analysis of *Chenery*,

4    *Camp*, *State Farm*, any of that.

5            And then finally, Your Honor, the government

6    stands up here and says that they can't tell a company who

7    they believe is engaged in divergence, that the company can

8    then exercise its own discretion and say if the DEA believes

9    that we're going to cut that company off.  They say they

10   can't do that because it would deny due process to that

11   underlying company which is to me a striking proposition in

12   a context in which they come in here and provide no process

13   and cut this company off across the board with respect to

14   its sales to all the hospitals, pharmacies, critical care

15   centers throughout the entire state of Florida.

16           And, in fact, it's not consistent with what DEA's

17   practice has been as one of our declarations shows.   In

18   fact, we did receive a call from DEA with respect to a

19   particular store.  And, in fact, the one case that they

20   actually cite in their pleading on this is a case from

21   Florida dealing with a circumstance from many years ago

22   where someone brought a lawsuit challenging the DEA's

23   jawboning policy of going to distributors and expressing

24   concerns that could result in someone cutting it off.  And

25   the Court held that didn't violate due process.  That is not

1  a basis to conclude that they could not have told the

2  company.

3         The final thing I should say, Your Honor, is that

4  the declarations they do submit here are sort of strange in

5  what they actually say they are supporting.  The government

6  does say that it's seeking to support the basis for the

7  administrator's decision.  But they never say that this

8  stack of information that they want this Court to consider

9  was actually ever itself presented to the administrator who

10 made the decision in this case.  They say, for example, at

11 Paragraph 83 of the Rannazzisi declaration, "The information

12 in all the foregoing paragraphs informed my decision to

13 recommend to the administrator that an ISO was an

14 appropriate course."

15        And then the Ruth Carter declaration says, "The

16 matters contained in this declaration were part of the

17 record considered by Joseph Rannazzisi and others at DEA and

18 formed the basis for the administrator's decision."  So we

19 don't even know that this information was in fact anything

20 that the administrator, the decision maker herself

21 considered.  So it really is, there's a grave risk of sort

22 of post-hoc rationalization inefficacy to allow the agency

23 to now come in and attempt to bolster a finding that it's

24 inadequate to be sustained.

25        THE COURT:  What about their position that there

1    had been a history of purported diversion on the part of

2    your client?  And as a result of that there had been several

3    other orders issued.  And that one of the things that was

4    required as a result of the agreement that had been issued

5    earlier was that there be anti-diversion measures in place.

6    And that those measures were not taken as they say evidenced

7    by what was happening in reference to these four pharmacies.

8              MR. MOSS:  Your Honor, what I can say about this

9    is what the ISO says, and that is all that is relevant for

10   present purposes.  What the ISO says is that on

11   September 30th, 2008, Cardinal Health entered into an

12   administrative memorandum agreement with DEA agreeing and

13   then it describes certain compliance measures.  Furthermore,

14   Cardinal acknowledged and agreed upon the obligations

15   undertaken that they do not fulfill the totality of its

16   obligations to maintain effective controls.  And it goes on

17   a little bit after that.  And it says then despite the MOA

18   and despite the public information Cardinal Health has

19   failed to maintain effective controls.

20             But then the only examples that it actually give,

21   the only findings that it makes with respect to those

22   allegations are with respect to those four stores.  And

23   that's our point is that if you look at those four stores

24   that they cannot sustain what the agency did here.

25             THE COURT:  What about government counsel's

1   position that if your position is correct and they have to

2   lay out what their entire case is it would be so onerous

3   that they could never take emergency action in order to

4   avoid the diversion which can obviously cause a significant

5   public health issue?

6           MR. MOSS:  Your Honor, this is a situation in

7   which the agency claims that the actions it issued here date

8   back to 2008.  It's a case, a circumstance where the agency

9   in October of 2007 served an administrative inspection

10  warrant on the company that essentially contains the same

11  allegations that it now makes in its ISO.

12          It was in five days able to put together a stack

13  of materials to present to this Court in the process.  And I

14  would submit to the Court that if the agency wants to take

15  the truly dramatic step of denying somebody the chance to be

16  heard, denying them due process and saying the risk here to

17  the public health and safety is so grave we have to act now

18  that the government should turn square corners in doing it.

19  And it should make it findings before so.  It should have

20  done that bulk of work before so.  It should have gone into

21  a decision.

22          We don't know if in fact this is the basis for the

23  administrator's decision.  All we know is is that it's the

24  basis now post hoc at least for explaining the

25  recommendation that others made to the administrator.

1    That's just not the way the administrative law process

2    works.  I would think that if anything in a case in which

3    the government is acting without providing a company with

4    due process, their obligation says anything greater to

5    actually explain their reasons for doing so and not just

6    engage in notice pleading and say we'll do that later.

7    We'll figure that out after the fact.  They have to figure

8    it out beforehand and they have to explain it.

9         THE COURT:  I mean I would have concerns obviously

10   about them coming up with new rationales for why it was

11   appropriate to issue the ISO.  But, if I am of the view that

12   the ISO is insufficient for me to conduct meaningful

13   judicial review why would this not fall within that second

14   exception where extra record evidence can be presented to

15   the Court in order to put the Court in a position where it

16   can make a meaningful and intelligent decision?

17        MR. MOSS:  Because, Your Honor, that exception

18   applies only in circumstances where the agency itself does

19   not have an actual affirmative legal obligation to make the

20   findings.  So cases, and I believe this is in *Overton Park*

21   for example, Your Honor.  The Court says look the agency was

22   actually non obligated to make these findings beforehand.

23   And therefore we're going to allow you to go somewhat beyond

24   an agency record on remand.

25        But the court cautions in doing that and says but

1    if the rule were different, if the rule actually required

2    that you make findings and that your decision be supported

3    by findings before the fact you can't do this.  And the

4    proper remedy is to set aside the order.  And that's exactly

5    the case here and the government has not cited any authority

6    in opposition to that.  They just cite these handful of

7    District Court decisions that contain no analysis.

8              THE COURT:  Thank you.

9              MR. MOSS:  Thank you, Your Honor.

10             THE COURT:  Just one other matter from government

11   counsel, what about this regulation that counsel cites that

12   he says requires that your ISO set forth the basis on which

13   the finding was made by the administrator and that wasn't

14   done, and therefore I'm stuck with deciding whether this

15   order stands or not based upon what's in the order itself?

16             MR. REEVES:  Your Honor, what the regulation

17   1301.36(e) in pertinent part is, "An order of immediate

18   suspension shall contain a statement of the findings

19   regarding the danger to public health or safety."  That is

20   exactly what is contained in the ISO.  Among other findings

21   it says on page three of the ISO, paragraph five,

22   "Cardinal's conduct described herein violated the provisions

23   of the administrative Memorandum of Agreement."  And as we

24   both discussed the Memorandum of Agreement is all about

25   Cardinal's failure to maintain adequate measures to prevent

1    diversion generally.

2         THE COURT:  But as I understand plaintiff's

3    counsel is suggesting that there has to be specific findings

4    of fact that supports the conclusion that the order needs to

5    be issued in order to protect the public safety.

6         MR. REEVES:  Your Honor, there is simply nothing

7    in the regulations, in the statute or in the case law as far

8    as I'm aware that requires an exhaustive factual recitation

9    in the ISO.  In that regard we've relied on the *Boston*

10   *Carrier*, a decision from the D.C. Circuit.  And we think

11   that the ISO is more than sufficient to let them know what

12   DEA's concerns are.

13        THE COURT:  Thank you.  Let me take a short break.

14        [Thereupon, recess taken at 2:43 p.m., resuming at

15        3:15 p.m.]

16        THE COURT:  This case does present a challenge to

17   the Court because we are talking about a very serious matter

18   that obviously Congress considered to be serious because of

19   the problem with the diversion of pharmaceutical substances

20   and the harm obviously that can cause when that diversion

21   considered which is why I would assume Congress gave the DEA

22   the authority to issue these types of orders in order to

23   impose immediate restriction to avoid potential harm to the

24   public.

25        On the other hand, the plaintiff obviously has a

1   significant interest to be protected because it is a

2   property right that they have to be involved in the business

3   of distributing pharmaceuticals with obviously reasonable

4   restrictions.  And there has to be a process accorded to a

5   pharmaceutical to ensure that their means of livelihood is

6   not taken away without appropriate process.

7           Obviously, the APA forms the predicate for the

8   challenge that is being made here.  And that requires

9   obviously that I make a determination as to whether the

10  action taken by the DEA was arbitrary and capricious.  And

11  based upon the record that currently exist before me it's

12  difficult if not impossible for me to make that

13  determination.  Because all I really have before me is the

14  ISO, coupled with the Memorandum of Agreement or

15  understanding that was entered into by the DEA with Cardinal

16  Health in reference to these past alleged violations or

17  diversions that the DEA believed was taking place.

18          That being the case, it seems to me that there are

19  inferences obviously that I could draw from what the ISO

20  says as it relates to the agreement that had been issued

21  that there would be anti-diversion measures in place or

22  implemented by Cardinal Health to ensure that diversion of

23  pharmaceutical substances did not occur.

24          What does the term findings mean?  It doesn't

25  really provide me with an assessment specifically as to

1    whether we're talking about conclusionary findings on the

2    part of the administrator that there's an imminent harm to

3    the public or whether they're talking about factual

4    findings.  And it seems to me that as a matter of due

5    process it has to mean factual findings.

6         Obviously, it seems to me not adequate for the

7    administrator to reach a conclusion without an articulation

8    of what the basis is for those conclusions.  So I think

9    there has to be some factual indication as to what the

10   predicate was for the administrator's conclusion that the

11   order had to be issued in order to avert imminent harm.

12        I think the most appropriate thing to do at this

13   point because I don't know if I buy the proposition that all

14   that is required is notice to be given.  I think there has

15   to be more than that.  And since the statute itself does

16   provide the ability of an affected party to come before the

17   Court to seek judicial relief that I have to have before me

18   an adequate record in order to make an intelligent decision

19   as to whether or not there has or has not been compliance

20   with the law, i.e. the APA.

21        And I'm not able to do that based solely upon the

22   ISO even with the incorporation of the Memorandum of

23   Agreement that was entered into by the parties which did

24   require that there be appropriate anti-diversion measures

25   implemented by Cardinal Health to ensure that diversion of

1    these pharmaceutical substances did not occur.

2           So my conclusion at this point is the appropriate

3    thing to do I mean, I could entertain a review of the

4    declarations that have been submitted for the purpose of

5    trying to assess what information was before the

6    administrator, but I think that would cause me to engage in

7    some level of speculation which I think would be

8    inappropriate.  So the appropriate thing I believe to do is

9    to for a limited period of time to extend the temporary

10   restraining order that was previously issued and to remand

11   the case to the agency for the agency to provide to me a

12   record of what was before the administrator and what the

13   factual predicate was that the administrator had before her

14   that she considered in deciding to issue this ISO.

15          So whatever that record is will have to be limited

16   to what the information was that was before the

17   administrator at the time she issued the ISO, and what she

18   considered in deciding that there was imminent danger and

19   therefore there was a need for the issuance of this ISO in

20   order for me to assess whether its issuance was arbitrary or

21   capricious.

22          On the other hand, from the plaintiff's

23   prospective, I do think it is appropriate to have that

24   record include information that the plaintiff says they

25   sought to present to the administrator or to the agency to

1   show that they were, in fact, complying with the Memorandum

2   of Agreement that the agency says was not complied with.

3   However, I will not consider any information from either

4   side regarding things that took place after the

5   administrator had made her decision to issue this ISO.

6           So I will as I said extend the life of the

7   temporary restraining order until that record can be

8   compiled.  It's going to have to be done extremely

9   expeditiously and then we'll come back for a further

10  hearing.  And with that I will make a determination as to

11  whether first what is being presented to me is in fact

12  information that was available to the administrator and

13  which she considered in deciding to make her decision.

14          And with that I will then be in a position to

15  intelligently assess whether the determination to issue this

16  order was in compliance with the APA.  But with the record I

17  have before me at this point I just cannot make that

18  determination, so I would conclude that this is -- whether I

19  do it here in court from an extrajudicial prospective which

20  I think would be very difficult and cumbersome to try and

21  do, I think it would fall under the second exception to

22  consider extra record information.  But I think the more

23  prudent thing is to remand the case to the agency for a

24  reasonable period of time in order to compile the record for

25  me to be able to consider in deciding whether or not it was

1   appropriate for this order to be issued.

2           My inclination would be to only, seems to me a lot

3   of that has been done already.  We don't have anything from

4   the administrator herself setting forth what she had before

5   her and what she considered in issuing the ISO.  So there

6   would have to be something of that nature presented to me,

7   but I would assume that all of that could be done within ten

8   days.  And then we would come back for a further hearing.

9   And again, that would also include the plaintiff's

10  declaration of what information it sought to try and present

11  to the DEA which according to the plaintiff was not

12  considered before this order was issued.

13          MR. MOSS:  Thank you, Your Honor.  Just to

14  clarify, is the Court ruling we would make a submission to

15  the DEA of what we believe the information was that existed?

16          THE COURT:  Yes, and then obviously that would be

17  presented to me also.

18          MR. MOSS:  And what time frame should we specify

19  for when we would make our submissions to the DEA?

20          THE COURT:  Since I'm giving them ten days I think

21  they would need that within a five day period.

22          MR. MOSS:  Five day?

23          THE COURT:  Yes.

24          MR. MOSS:  And then --

25          THE COURT:  And then we'll set a hearing date now

1    to come back after that ten day expiration when we would

2    conduct the hearing on the motion for preliminary

3    injunction.

4              MR. MOSS:  Thank you, Your Honor.  And then the

5    TRO would continue until that hearing?

6              THE COURT:  It will remain in effect until that

7    day, yes.

8              MR. MOSS:  Thank you, Your Honor.

9              THE COURT:  So that would mean that the DEA would

10   have to compile and submit to the Court the record by the

11   23rd of February since the -- well, let me make that

12   actually the 24th, because the five days unless the

13   plaintiff is able to submit its declaration by the 17th, I

14   would make theirs due on the 20th since the 17th actually is

15   a holiday but that's fine.  You can still, I assume counsel

16   is working, I will be, by the 20th.  And that will give DEA

17   several days to consider that before it has to submit the

18   record.  And we can come back that following week, the week

19   of the 27th, midweek for a hearing.  I'm available on the

20   29th in the afternoon.  Is that a good date?

21             MR. MOSS:  Yes, Your Honor.

22             THE COURT:  At two o'clock.  Anything else?

23             MR. REEVES:  No, Your Honor, not from the

24   government.

25             THE COURT:  Thank you.

1          [Thereupon, the proceedings adjourned at 3:25

2          p.m.]

3                          CERTIFICATE

4          I, Cathryn J. Jones, an Official Court Reporter

5    for the United States District Court of the District of

6    Columbia, do hereby certify that I reported, by machine

7    shorthand, the proceedings had and testimony adduced in the

8    above case.

9          I further certify that the foregoing 32 pages

10   constitute the official transcript of said proceedings as

11   transcribed from my machine shorthand notes.

12          In witness whereof, I have hereto subscribed my

13   name, this the 15th day of February, 2012.

14

15

16                          _____

17                          Cathryn J. Jones, RPR
                            Official Court Reporter

18

19

20

21

22

23

24

25

**1**

**11:30** [1] 10/14
**11:30 p.m** [1] 12/8
**12-185** [2] 1/4 3/3
**1200** [1] 1/16
**13** [1] 1/5
**1301.36** [2] 6/3 25/17
**1301.37** [5] 4/18 5/15 14/6 18/18 19/1
**15th** [1] 33/13
**17th** [2] 32/13 32/14
**185** [2] 1/4 3/3
**1875** [1] 1/13
**1984** [1] 17/21

**2**

**20** [1] 2/4
**20001** [1] 2/13
**20005** [1] 1/16
**20006** [1] 1/14
**2007** [2] 13/21 23/9
**2008** [4] 13/9 15/1 22/11 23/8
**2012** [4] 1/5 4/6 13/22 33/13
**20530** [1] 2/5
**20th** [2] 32/14 32/16
**21** [3] 4/18 5/15 6/2
**22** [1] 11/18
**22152** [1] 2/9
**23rd** [1] 32/11
**24th** [1] 32/12
**26th** [1] 7/11
**27th** [1] 32/19
**29th** [1] 32/20
**2:43** [1] 26/14
**2nd** [3] 4/6 14/18 16/22

**3**

**30** [1] 16/5
**30th** [1] 22/11
**32** [1] 33/9
**333** [1] 2/12
**3:15** [1] 26/15
**3:25** [1] 33/1

**4**

**43017** [1] 1/19

**6**

**64 percent** [1] 11/20
**6521** [1] 2/12

**7**

**700** [1] 1/16
**7000** [1] 1/18

**8**

**80** [1] 11/22
**824** [1] 14/12
**83** [1] 21/11
**8701** [1] 2/8

**A**

**ability** [1] 28/16
**able** [7] 12/22 15/23 18/8 23/12 28/21 30/25 32/13
**about** [18] 8/12 9/5 9/20 13/15 14/7 14/16 16/5 16/23 17/3 21/25 22/8 22/25 24/10 25/11 25/24 26/17 28/1 28/3
**above** [1] 33/8
**absent** [2] 4/22 16/11
**absolutely** [2] 14/4 15/4
**accept** [1] 18/7
**accorded** [1] 27/4
**according** [1] 31/11
**accounted** [1] 11/20

**acknowledge** [1] 13/8
**acknowledged** [1] 22/14
**across** [1] 20/13
**act** [2] 6/6 6/7 23/17
**acted** [1] 11/21
**acting** [5] 5/18 5/25 12/14 12/15 24/3
**action** [7] 3/3 4/3 10/21 12/4 18/8 23/3
**actions** [2] 4/9 23/7
**actual** [2] 8/8 24/19
**actually** [17] 5/24 5/25 7/8 8/20 10/15 11/4 11/12 12/3 20/20 21/5 21/9 22/20 24/5 24/22 25/1 32/12 32/14
**adding** [1] 12/2
**address** [2] 10/24 11/11
**addressing** [1] 11/1
**adduced** [1] 33/7
**adequate** [5] 13/11 15/18 25/25 28/6 28/18
**adjourned** [1] 33/1
**Administration** [1] 2/7
**administrative** [22] 4/24 4/25 5/4 5/20 5/21 6/22 7/1 9/11 10/5 10/19 11/2 12/11 12/13 12/18 12/25 14/15 19/12 20/3 22/12 23/9 24/1 25/23
**administrator** [26] 4/5 5/5 8/21 9/25 10/17 10/18 14/17 17/6 17/18 18/11 18/25 21/9 21/13 21/20 23/25 25/13 28/2 28/7 29/6 29/12 29/13 29/17 29/25 30/5 30/12 31/4
**administrator's** [4] 21/7 21/18 23/23 28/10
**advocacy** [1] 12/17
**advocate** [1] 12/15
**affected** [1] 28/16
**affidavit** [1] 14/22
**affidavits** [4] 8/5 8/13 16/10 19/15
**affirmative** [1] 24/19
**after** [13] 3/16 6/25 7/6 7/21 8/9 10/14 12/5 12/20 18/2 22/17 24/7 30/4 32/1
**afternoon** [5] 3/5 3/10 3/11 3/15 32/20
**afterwards** [1] 13/4
**again** [4] 7/16 7/17 14/14 31/9
**against** [2] 10/21 13/14
**agency** [41]
**agency's** [7] 7/10 12/12
**ago** [3] 5/15 11/14 20/21
**agreed** [1] 22/14
**agreeing** [1] 22/12
**agreement** [13] 13/9 13/11 14/2 14/4 15/1 22/4 22/12 25/23 25/24 27/14 27/20 28/23 30/2
**aided** [1] 2/17
**al** [2] 1/5 3/3
**all** [16] 4/7 7/20 7/21 10/11 13/15 14/5 15/8 17/3 20/14 21/12 22/9 23/23 25/24 27/13 28/13 31/7
**allegations** [5] 4/16 11/11 11/12 22/22 23/11
**alleged** [1] 27/16
**allow** [2] 21/22 24/23
**allowed** [1] 20/2
**along** [1] 13/3
**already** [2] 19/12 31/3
**also** [6] 3/14 3/19 14/8 15/6 31/9 31/17
**am** [1] 24/11
**among** [2] 14/25 25/20
**amount** [4] 6/11 11/21 12/17 15/2
**analysis** [3] 20/2 20/3 25/7
**another** [1] 7/12
**answer** [2] 15/12 15/15
**anti** [5] 13/10 13/25 22/5 27/21 28/24
**anti-diversion** [5] 13/10 13/25 22/5 27/21 28/24
**any** [10] 4/2 4/24 7/3 7/3 15/12 15/13

**15/15 20/4 25/5 30/3**
**anyone** [1] 7/18
**anything** [6] 17/9 21/19 24/2 24/4 31/3 32/22
**APA** [4] 4/21 27/7 28/20 30/16
**appear** [1] 11/4
**APPEARANCES** [2] 1/11 2/1
**applies** [1] 24/18
**appropriate** [9] 21/14 24/11 27/6 28/12 28/24 29/2 29/8 29/23 31/1
**appropriately** [1] 17/17
**arbitrary** [6] 3/24 4/9 16/20 18/9 27/10 29/20
**arbitrator** [1] 12/15
**are** [36]
**area** [1] 13/18
**arguments** [3] 12/21 16/1 16/2
**Arthur** [2] 2/3 3/13
**articulated** [1] 8/4
**articulating** [1] 8/23
**articulation** [1] 28/7
**as** [42]
**aside** [2] 19/19 25/4
**ask** [1] 15/25
**asked** [2] 9/20 11/16
**asserting** [1] 6/11
**assess** [3] 29/5 29/20 30/15
**assessment** [1] 27/25
**assistance** [2] 16/7 16/13
**assume** [6] 8/5 16/24 17/9 26/21 31/7 32/15
**attempt** [1] 21/23
**authority** [3] 14/8 25/5 26/22
**authorize** [1] 8/25
**available** [2] 30/12 32/19
**Avenue** [3] 1/13 2/4 2/12
**avert** [1] 28/11
**avoid** [2] 23/4 26/23
**aware** [2] 17/13 26/8
**away** [1] 27/6

**B**

**back** [6] 10/12 23/8 30/9 31/8 32/1 32/18
**based** [10] 10/7 12/12 13/21 13/22 14/12 16/1 16/20 25/15 27/11 28/21
**basis** [10] 5/17 14/24 16/5 21/1 21/6 21/18 23/22 23/24 25/12 28/8
**be** [49]
**because** [12] 6/11 7/7 12/13 15/22 20/10 24/17 26/17 26/18 27/1 27/13 28/13 32/12
**been** [9] 3/16 20/17 22/1 22/2 22/4 27/20 28/19 29/4 31/3
**before** [41]
**beforehand** [3] 9/25 24/8 24/22
**behalf** [1] 3/20
**being** [6] 6/12 11/19 13/5 27/8 27/18 30/11
**believe** [7] 7/4 7/13 20/7 24/20 29/8 31/15
**believed** [1] 7/24 27/17
**believes** [1] 20/8
**between** [1] 13/24
**beyond** [4] 11/2 11/6 19/21 24/23
**binding** [1] 15/5
**bit** [1] 22/17
**board** [1] 20/13
**bolster** [1] 21/23
**Boston** [1] 26/9
**Boswell** [1] 17/20
**both** [2] 11/24 25/24
**bound** [1] 19/14
**bounds** [1] 17/20
**Boynton** [2] 1/12 3/7

## B

**break** [1] 26/15
**breaks** [1] 10/20
**Brian** [2] 1/12 3/7
**brick** [1] 13/23
**briefed** [1] 19/23
**briefing** [1] 19/23
**Briefly** [1] 18/15
**briefs** [2] 16/2 19/23
**brought** [1] 20/22
**bulk** [1] 23/20
**burden** [2] 6/18 11/24
**business** [1] 27/2
**buy** [1] 28/13

## C

**call** [1] 20/18
**Camp** [4] 10/10 19/9 19/10 20/4
**can** [14] 3/23 4/1 4/9 11/11 15/24 20/7
22/8 23/4 24/14 24/16 26/20 30/7 32/15
32/18
**can't** [7] 15/8 15/13 17/7 19/21 20/6
20/10 25/3
**candor** [1] 17/1
**cannot** [4] 10/1 19/15 22/24 30/17
**capricious** [6] 3/25 4/10 16/20 18/9
27/10 29/21
**CARDINAL** [22] 1/3 1/18 1/18 3/2 3/6 3/7
6/21 6/22 6/25 7/11 7/16 7/22 11/9
11/14 14/25 15/13 22/11 22/14 22/18
27/15 27/22 28/25
**Cardinal's** [2] 25/22 25/25
**care** [1] 20/14
**Carrier** [1] 26/10
**carrying** [1] 6/18
**Carter** [1] 21/15
**case** [23] 6/23 9/16 10/11 10/25 11/4
12/20 14/7 14/11 17/22 19/22 20/19
20/20 21/10 23/2 23/8 24/2 25/5 26/7
26/16 27/18 29/11 30/23 33/8
**cases** [4] 10/10 19/9 19/25 24/20
**Cathryn** [3] 2/11 33/4 33/16
**cause** [7] 5/20 14/7 18/20 19/1 23/4
26/20 29/6
**cautions** [1] 24/25
**CCNV** [2] 10/11 19/10
**centers** [1] 20/15
**certain** [1] 9/24
**certainly** [2] 14/19 19/4
**CERTIFICATE** [1] 33/3
**certify** [2] 33/6 33/9
**CFR** [3] 4/18 5/15 6/2
**challenge** [3] 4/22 26/16 27/8
**challenging** [1] 20/22
**chance** [1] 23/15
**Chenery** [3] 10/10 19/9 20/3
**Chief** [2] 2/8 3/7
**Circuit** [2] 10/11 26/10
**Circuit's** [1] 17/20
**circumstance** [2] 20/21 23/8
**circumstances** [5] 9/6 15/21 16/4 16/12
24/18
**cite** [5] 5/18 19/22 19/25 20/20 25/6
**cited** [5] 5/15 5/15 14/10 19/25 25/5
**cites** [1] 25/11
**Civil** [2] 2/4 3/3
**claims** [1] 23/7
**clarify** [1] 31/14
**clear** [5] 5/9 10/9 10/12 18/17 19/10
**clearly** [1] 6/3
**client** [3] 8/12 17/10 22/2
**close** [2] 6/18 12/1
**COLUMBIA** [2] 1/2 33/6
**come** [21] 3/4 6/18 8/5 9/13 9/19 9/19

10/1 10/2 10/12 11/25 12/5 12/7 13/2
13/3 13/20/12 21/23 28/16 30/9 31/8 32/1
32/16
**comes** [3] 8/13 10/23 18/2
**coming** [3] 12/20 17/2 24/10
**common** [1] 13/24
**company** [11] 8/15 10/21 10/22 20/6
20/7 20/9 20/11 20/13 21/2 23/10 24/3
24/24
**compile** [2] 30/24 32/10
**compiled** [1] 30/8
**completely** [1] 18/17
**compliance** [4] 13/15 22/13 28/19 30/16
**complied** [1] 30/2
**complying** [1] 30/1
**computer** [1] 2/17
**computer-aided** [1] 2/17
**concern** [1] 15/6
**concerns** [4] 13/17 20/24 24/9 26/12
**conclude** [2] 21/1 30/18
**conclusion** [5] 19/6 26/4 28/7 28/10
29/2
**conclusionary** [1] 28/1
**conclusions** [1] 28/8
**conduct** [3] 24/12 25/22 32/2
**Congress** [3] 14/13 26/18 26/21
**conjunction** [1] 14/10
**consequences** [1] 6/7
**consider** [13] 3/23 3/25 4/2 4/9 8/24
17/17 17/25 18/12 21/8 30/3 30/22
30/25 32/17
**consideration** [2] 7/5 15/17
**considered** [13] 10/18 17/18 18/4 18/11
21/17 21/21 26/18 26/21 29/14 29/18
30/13 31/5 31/12
**considering** [4] 4/23 10/17
**consistent** [1] 13/6
**constitute** [1] 33/10
**Constitution** [1] 2/12
**Cont'd** [1] 2/1
**contain** [5] 17/8 19/2 19/15 25/7 25/18
**contained** [8] 4/1 5/10 8/16 14/5 14/23
20/2 21/16 25/20
**contains** [1] 23/10
**contemporaneous** [1] 10/6
**context** [1] 20/12
**continue** [1] 32/5
**continued** [1] 16/17
**contrary** [1] 15/6
**controlled** [2] 7/14 13/18
**controls** [3] 13/14 22/16 22/19
**convincing** [1] 13/6
**corners** [3] 8/17 14/23 23/18
**correct** [3] 9/2 18/10 23/1
**Cote** [2] 2/6 3/13
**could** [10] 15/8 16/4 17/18 18/11 20/24
21/1 23/3 27/19 29/3 31/7
**counsel** [10] 2/8 3/3 3/12 3/22 7/16 13/6
25/11 25/11 26/3 32/15
**counsel's** [1] 22/25
**country** [1] 13/18
**coupled** [1] 27/14
**course** [1] 21/14
**court** [37]
**Court ruling** [1] 31/14
**Court's** [1] 6/16
**Craig** [2] 1/17 3/6
**create** [1] 6/14
**created** [1] 14/15
**critical** [1] 20/14
**cumbersome** [1] 30/20
**currently** [1] 27/11
**Curteman** [2] 2/6 3/14
**cut** [9] 6/21 9/21 11/14 11/18 15/8 15/11
15/14 20/9 20/13
**cutting** [2] 10/21 20/24

**CV** [1] 1/4
**GVS** [3] 6/24 11/18 11/18
## D

**D.C** [7] 1/5 1/14 1/16 2/5 2/13 17/20
26/10
**danger** [8] 6/5 6/14 6/19 19/3 19/5 19/7
25/19 29/18
**date** [5] 4/5 5/5 23/7 31/25 32/20
**day** [6] 6/25 31/21 31/22 32/1 32/7
33/13
**days** [5] 23/12 31/8 31/20 32/12 32/17
**DC** [1] 10/11
**de** [1] 15/11
**DEA** [34]
**DEA's** [4] 16/19 20/16 20/22 26/12
**deal** [1] 10/24
**dealing** [2] 5/23 20/21
**deals** [2] 5/19 6/2
**December** [1] 7/16
**deciding** [7] 3/24 4/9 25/14 29/14 29/18
30/13 30/25
**decision** [32] 4/6 7/20 7/22 7/23 8/1
10/6 10/7 10/8 10/10 10/11 10/13 12/12
12/13 13/3 14/18 15/21 16/20 17/19
17/20 21/7 21/10 21/12 21/18 21/20
23/21 23/23 24/16 25/2 26/10 28/18
30/5 30/13
**decisions** [2] 20/1 25/7
**declaration** [8] 15/18 16/25 17/4 21/11
21/15 21/16 31/10 32/13
**declarations** [10] 8/5 8/14 8/25 9/5
16/10 16/23 17/6 20/17 21/4 29/4
**Dedra** [2] 2/6 3/14
**Defendant** [1] 2/2
**Defendants** [1] 1/6
**demonstrated** [1] 13/20
**demonstrating** [1] 6/18
**deny** [1] 20/10
**denying** [2] 23/15 23/16
**DEPARTMENT** [2] 2/3 2/7
**deposition** [1] 16/25
**described** [1] 25/22
**describes** [1] 22/13
**description** [1] 4/16
**designed** [1] 14/13
**despite** [2] 22/17 22/18
**detail** [1] 14/3
**determination** [5] 27/9 27/13 30/10
30/15 30/18
**did** [12] 7/25 10/4 11/15 11/16 17/22
18/12 19/18 20/18 22/24 27/23 28/23
29/1
**didn't** [1] 20/25
**die** [1] 11/8
**different** [2] 14/16 25/1
**difficult** [2] 27/12 30/20
**disagree** [1] 14/6
**discretion** [1] 20/8
**discussed** [1] 25/24
**dispassionate** [1] 12/18
**dispensed** [1] 6/12
**distributed** [2] 11/9 11/22
**distributing** [3] 7/14 8/12 27/3
**distribution** [3] 10/2 13/21 13/23
**distributor** [2] 15/10 15/14
**distributors** [1] 20/23
**district** [8] 1/1 1/2 1/10 2/12 20/1 25/7
33/5 33/5
**divergence** [1] 20/7
**diversion** [19] 6/13 7/4 7/13 7/19 7/25
13/10 13/14 13/19 13/25 22/1 22/5 23/4
26/1 26/19 26/20 27/21 27/22 28/24
28/25
**diversions** [1] 27/17

## D

**Division [1]** 2/4
**do [26]** 3/25 6/9 9/3 9/21 9/24 9/24 13/1 13/12 13/13 15/8 15/18 16/1 17/5 20/10 21/4 22/15 24/6 25/3 28/12 28/21 29/3 29/8 29/23 30/19 30/21 33/6
**Docket [1]** 1/4
**doctors [1]** 11/18
**document [2]** 4/15 19/6
**documents [1]** 6/9
**does [7]** 6/14 13/7 21/6 24/18 26/16 27/24 28/15
**doesn't [8]** 6/10 10/2 10/4 10/12 13/1 13/16 15/2 27/24
**doing [3]** 23/18 24/5 24/25
**DOJ [1]** 3/13
**don't [10]** 5/18 9/3 9/8 9/8 10/17 17/3 21/19 23/22 28/13 31/3
**done [5]** 23/20 25/14 30/8 31/3 31/7
**door [1]** 9/12
**Douglas [1]** 1/15 3/8
**down [3]** 10/20 12/1 14/15
**Draconian [2]** 10/21 12/4
**dramatic [2]** 6/7 23/15
**draw [1]** 27/19
**Drive [1]** 2/8
**Drug [1]** 2/7
**drugs [1]** 6/12
**Dublin [1]** 1/19
**due [13]** 9/16 9/17 11/25 12/2 13/1 15/5 15/10 20/10 20/25 23/16 24/4 28/4 32/14

## E

**earlier [1]** 22/5
**Eddleman [1]** 2/2
**effect [1]** 32/6
**effective [3]** 13/14 22/16 22/19
**efforts [1]** 13/16
**either [2]** 8/13 30/3
**else [1]** 32/22
**email [1]** 7/17
**embodies [1]** 9/17
**emergency [1]** 23/3
**enact [1]** 13/10
**Enforcement [1]** 2/7
**engage [3]** 9/13 24/6 29/6
**engaged [4]** 7/4 7/13 27/24 20/7
**enormous [2]** 6/5 12/17
**enough [1]** 17/7
**ensure [3]** 27/5 27/22 28/25
**entered [3]** 22/11 27/15 28/23
**entertain [1]** 29/3
**entire [3]** 14/11 20/15 23/2
**entitled [2]** 18/19 18/21
**ERIC [2]** 1/5 3/2
**Esquire [9]** 1/12 1/12 1/15 1/17 2/2 2/2 2/3 2/6 2/6
**essentially [1]** 23/10
**et [2]** 1/5 3/3
**evaluated [1]** 18/4
**even [8]** 6/22 8/11 10/17 11/12 11/17 12/5 21/19 28/22
**event [1]** 8/8
**ever [1]** 21/9
**evidence [6]** 4/5 5/5 17/17 18/10 18/12 24/14
**evidenced [1]** 22/6
**exactly [3]** 17/7 25/4 25/20
**example [2]** 21/10 24/21
**examples [1]** 22/20
**exception [3]** 24/14 24/17 30/21
**exceptions [1]** 4/22
**exercise [1]** 20/8

**exhaustive [3]** 4/17 4/20 26/8
**exist [3]** 19/17 19/18 27/11
**existed [1]** 31/15
**existence [1]** 19/12
**exists [1]** 19/15
**expanding [1]** 15/4
**expeditiously [1]** 30/9
**expiration [1]** 32/1
**expire [1]** 15/22
**explain [4]** 14/3 14/24 24/5 24/8
**explaining [1]** 23/24
**explanation [4]** 10/6 10/8 10/10 15/3
**expressed [1]** 8/12
**expressing [1]** 20/23
**expressly [1]** 13/8
**extend [3]** 15/24 29/9 30/6
**Extension [1]** 18/22
**extra [2]** 24/14 30/22
**extrajudicial [1]** 30/19
**extraordinary [1]** 16/11
**extremely [1]** 30/8

## F

**fact [24]** 5/24 9/9 9/9 9/10 9/10 9/11 10/3 11/3 11/13 12/5 12/20 13/17 16/14 18/3 20/16 20/18 20/19 21/19 23/22 24/7 25/3 26/4 30/1 30/11
**facto [1]** 15/11
**factual [7]** 4/17 4/20 26/8 28/3 28/5 28/9 29/13
**failed [1]** 22/19
**failure [1]** 13/13 25/25
**fall [5]** 5/12 10/7 12/12 24/13 30/21
**far [1]** 26/7
**Farm [3]** 10/11 19/10 20/4
**Farquhar [2]** 1/15 3/8
**February [6]** 1/5 4/6 14/18 16/22 32/11 33/13
**February 2nd [3]** 4/6 14/18 16/22
**fell [1]** 11/22
**felt [1]** 9/7
**figure [2]** 24/7 24/7
**filing [1]** 10/15
**filings [4]** 16/15 16/16 16/16 17/1
**filled [1]** 11/19
**final [3]** 18/22 18/23 21/3
**finally [1]** 20/5
**find [2]** 9/15 9/17
**finding [6]** 10/23 11/8 14/3 14/12 14/24 19/4 21/23 25/13
**findings [35]**
**fine [1]** 32/15
**first [2]** 7/23 30/11
**five [5]** 23/12 25/21 31/21 31/22 32/12
**fix [1]** 15/8
**Florida [5]** 6/25 7/2 13/19 20/15 20/21
**fluent [1]** 17/7
**focal [1]** 19/11
**following [1]** 32/18
**foregoing [2]** 21/12 33/9
**formal [2]** 11/2 19/14
**formed [1]** 21/18
**forms [1]** 27/7
**forth [2]** 25/12 31/4
**forward [2]** 3/4 12/24
**four [5]** 6/20 8/16 11/9 13/12 13/16 14/23 19/8 22/7 22/22 22/23
**frame [1]** 31/18
**Friday [2]** 10/14 12/7
**front [1]** 5/21
**fulfill [1]** 22/15
**fully [1]** 17/8
**fundamental [1]** 10/4
**fundamentally [1]** 12/23
**further [3]** 30/9 31/8 33/9

## Furthermore [1] 22/13

## G

**gave [2]** 10/8 26/21
**general [2]** 18/2 19/5
**generally [4]** 4/22 13/11 13/14 26/1
**geographic [1]** 13/18
**get [5]** 9/22 10/12 10/14 13/1 16/18
**gets [1]** 12/14
**Giacomin's [1]** 17/4
**give [4]** 9/3 10/9 22/20 32/16
**given [5]** 5/24 9/22 11/3 11/3 11/13 28/14
**gives [1]** 10/23
**giving [1]** 31/20
**go [3]** 11/2 19/21 24/23
**goes [2]** 11/6 22/16
**going [10]** 6/6 6/7 12/7 12/8 14/22 15/22 20/9 20/23 24/23 24/23 30/8
**Goldberg [2]** 2/3 3/13
**gone [1]** 23/20
**good [6]** 3/5 3/10 3/11 3/15 12/10 32/20
**got [1]** 7/23
**government [12]** 3/12 3/21 9/4 18/17 20/5 21/5 22/25 23/18 24/3 25/5 25/10 32/24
**grave [2]** 21/21 23/17
**greater [2]** 14/3 24/4

## H

**had [18]** 5/1 8/1 9/7 10/9 13/11 13/13 16/21 17/5 19/17 22/1 22/22 22/4 27/20 28/11 29/13 30/5 31/4 33/7
**HALE [1]** 1/13 3/8
**hand [2]** 26/25 29/22
**handful [2]** 20/1 25/6
**happened [3]** 7/8 7/9 7/21
**happening [1]** 22/7
**happy [2]** 10/24 15/15
**harm [6]** 14/12 17/4 26/20 26/23 28/2 28/11
**has [34]**
**have [33]** 5/25 8/3 9/3 9/9 10/22 13/2 17/2 17/18 18/11 19/5 19/21 21/1 23/1 23/17 23/19 23/20 24/7 24/8 24/9 24/19 27/2 27/13 28/17 28/17 29/4 29/15 29/23 30/8 30/17 31/3 31/6 32/10 33/12
**having [1]** 3/16
**he [7]** 14/8 14/10 14/10 15/6 17/10 18/25 25/12
**health [27]** 1/3 1/18 3/2 3/6 3/7 6/5 6/19 6/21 6/22 6/25 7/11 7/16 7/22 11/9 11/14 14/25 19/3 19/5 19/7 22/11 22/18 23/5 23/17 25/19 27/16 27/22 28/25
**hear [2]** 8/22 15/18
**heard [2]** 6/8 23/16
**hearing [11]** 1/8 3/18 3/19 6/15 16/4 30/10 31/8 31/25 32/2 32/5 32/19
**heart [1]** 16/18
**heavy [1]** 6/18
**Heckler [1]** 17/21
**Heim [2]** 2/2 3/13
**held [1]** 20/25
**help [1]** 16/18
**her [6]** 4/6 14/18 29/13 30/5 30/13 31/5
**here [13]** 4/24 9/15 11/13 14/17 20/6 20/12 21/4 22/23 23/7 23/16 25/5 27/8 30/19
**here's [1]** 13/4
**hereby [1]** 33/6
**herein [1]** 25/22
**hereto [1]** 33/12
**herself [1]** 10/18 21/20 31/4
**high [2]** 11/24 16/5
**his [4]** 6/4 15/18 17/10 19/2

**H**

history [1] 22/1
hit [1] 16/4
hoc [6] 9/13 10/13 15/2 19/16 21/22 23/24
HOLDER [2] 1/5 3/3
holiday [1] 32/15
Honor [45]
HONORABLE [1] 1/9
Hospital [1] 17/21
hospitals [1] 20/14
However [1] 30/3
hydrocodone [1] 13/21
HYMAN [2] 1/15 3/8

**I**

I'm [13] 7/9 8/22 13/5 14/19 15/15 16/14 17/7 17/12 25/14 26/8 28/21 31/20 32/19
i.e [1] 28/20
identify [1] 3/4
immediate [7] 5/11 5/23 6/19 9/23 19/2 25/17 26/23
immediately [1] 9/24
imminent [5] 6/19 14/12 28/2 28/11 29/18
implemented [2] 27/22 28/25
important [1] 15/9
impose [1] 26/23
impossible [1] 27/12
inadequate [3] 13/2 13/25 21/24
inappropriate [1] 29/8
INC [1] 1/3
inclination [1] 31/2
include [3] 6/4 29/24 31/9
includes [1] 14/8
inconsistent [1] 16/8
incorporation [1] 28/22
indicate [1] 6/13
indicated [1] 12/21
indication [1] 28/9
inefficacy [1] 21/22
inferences [1] 27/19
information [22] 3/23 3/25 4/1 4/2 4/11 8/4 16/21 17/24 18/2 18/6 21/8 21/11 21/19 22/18 29/5 29/16 29/24 30/3 30/12 30/22 31/10 31/15
informed [1] 15/9
initially [1] 19/13
initiation [1] 5/20
injunction [2] 3/18 32/3
injury [1] 12/2
inspection [2] 6/23 7/1 23/9
instance [1] 17/4
insufficient [1] 24/12
insult [1] 12/2
intelligent [2] 24/16 28/18
intelligently [1] 30/15
intended [2] 4/15 4/16
interest [1] 27/1
Internet [1] 13/22
invalid [1] 19/19
involve [1] 17/22
involved [1] 27/2
irreparable [1] 17/4
is [131]
is Craig [1] 3/6
isn't [2] 4/24 13/6
ISO [38]
issuance [3] 17/11 29/19 29/20
issue [9] 3/19 3/22 15/21 23/5 24/11 26/22 29/14 30/5 30/15
issued [23] 3/24 4/5 6/23 7/6 7/8 7/9 7/11 8/1 8/10 9/6 9/7 14/18 16/21 22/3

22/4 23/7 26/5 27/20 28/11 29/10 29/17 31/1 31/12
issuing [2] 14/11 31/5
it [84]
it's [13] 10/20 10/21 12/1 12/14 12/15 18/10 20/16 21/6 21/23 23/8 23/23 27/11 30/8
its [29] 5/12 6/1 6/8 6/9 6/18 6/21 6/22 7/1 7/20 7/21 7/22 8/1 10/6 10/8 10/9 10/13 10/22 10/23 13/15 13/20 13/22 14/11 19/14 20/8 20/14 22/15 23/11 29/20 32/13
itself [17] 4/1 4/8 5/2 6/10 6/12 11/14 11/18 12/7 12/13 13/3 13/8 14/1 19/18 21/9 24/18 25/15 28/15

**J**

jawboning [1] 20/23
Jones [2] 2/11 33/4 33/16
Joseph [1] 21/17
JR [1] 1/5
judge [4] 1/9 1/10 4/4 5/21
judicial [4] 5/4 19/11 24/13 28/17
jurisdictions [1] 20/1
just [13] 3/25 4/15 8/4 15/7 15/13 18/16 19/5 24/1 24/5 25/6 25/10 30/17 31/13
JUSTICE [2] 2/3 2/7

**K**

know [11] 4/7 10/17 11/24 12/21 15/21 17/3 21/19 23/22 23/23 26/11 28/13
knowledge [1] 8/3

**L**

Lakeland [1] 13/10
Lakeland's [2] 13/13 13/25
large [2] 6/11 11/10
Larry [2] 2/6 3/13
last [2] 11/20 16/15
late [1] 16/17
later [1] 24/6
Laura [2] 2/2 3/13
law [12] 5/9 5/21 6/17 10/5 10/19 12/11 18/16 19/17 20/3 24/1 26/7 28/20
lawsuit [1] 20/22
lay [1] 23/2
least [3] 10/16 12/22 23/24
Lee [2] 2/2 3/11
legal [2] 3/7 24/19
let [4] 9/13 26/11 26/13 32/11
letter [2] 7/2 8/21
level [1] 29/7
life [1] 30/6
like [3] 10/10 14/6 19/9
limited [6] 4/22 6/16 10/25 14/22 29/9 29/15
litigants [1] 12/19
litigation [1] 13/4
little [1] 22/17
live [2] 16/11 19/24
livelihood [1] 27/5
long [3] 6/23 10/25 11/14
longer [1] 12/14
look [3] 12/24 22/23 24/21
lot [1] 31/2

**M**

machine [3] 2/17 33/6 33/11
made [14] 5/25 7/20 7/21 8/14 9/1 16/1 16/15 16/16 19/13 21/10 23/25 25/13 27/8 30/5
maintain [4] 13/13 22/16 22/19 25/25
major [1] 13/17
make [24] 5/17 5/17 6/8 6/11 10/12 11/4 12/3 12/6 16/2 23/19 24/16 24/19 24/22

25/2 27/9 27/12 28/18 30/10 30/13 30/13 31/14 31/19 32/11 32/14
maker [1] 21/20
makes [5] 5/22 6/5 14/6 22/21 23/11
making [3] 8/2 10/16 12/21
many [1] 20/21
Massachusetts [1] 2/4
materials [2] 12/8 23/13
matter [11] 3/15 3/17 4/25 6/17 9/10 11/24 12/25 19/17 25/10 26/17 28/4
matters [1] 21/16
may [2] 17/12 18/14
McNAMARA [2] 1/15 3/9
me [30] 3/17 9/13 9/24 18/9 29/2 29/6 30/17 31/2 31/6 31/17 32/11
mean [6] 13/11 24/9 27/24 28/5 29/3 32/9
meaningful [2] 24/12 24/16
means [1] 27/5
measures [8] 13/10 13/25 22/5 22/6 22/13 25/25 27/21 28/24
meet [1] 9/19
memorandum [11] 13/9 13/11 14/1 14/4 15/1 22/12 25/23 25/24 27/14 28/22 30/1
Memorial [1] 17/20
merits [1] 16/19
midweek [1] 32/19
mindful [2] 14/20 16/14
minutes [1] 16/5
MOA [1] 22/17
moment [1] 5/14
Monday [1] 1/5
months [1] 11/21
more [4] 11/22 26/11 28/15 30/22
Morford [1] 1/17 3/6
Morissette [1] 2/8
morning [2] 16/17 17/2
mortar [1] 13/23
Moss [6] 1/12 3/6 13/7 13/15 14/6 15/6
most [1] 28/12
motion [2] 3/16 32/2
MOTIONS [1] 1/8
Mr [8] 13/7 13/15 14/2 14/6 14/19 15/6 16/4 17/4
Mr. [2] 5/7 16/18
Mr. Rannazzisi's [2] 5/7 16/18
my [6] 7/5 21/12 29/2 31/2 33/11 33/12

**N**

N.W [3] 1/16 2/4 2/12
name [1] 33/13
namely [1] 16/19
nature [1] 31/6
need [5] 5/17 8/25 15/18 29/19 31/21
needs [1] 26/4
negate [1] 12/14
neutral [1] 12/14
never [3] 11/3 21/7 23/3
new [3] 10/23 19/12 24/10
night [2] 10/14 12/7
no [13] 1/4 4/14 11/13 12/14 13/7 14/8 18/1 19/22 20/2 20/3 20/12 25/7 32/23
non [1] 24/22
normally [1] 16/9
not [49]
notes [1] 33/11
nothing [4] 4/19 13/12 17/5 26/6
notice [4] 5/22 7/23 24/6 28/14
notice pleading [1] 24/6
now [8] 3/17 9/14 12/7 21/23 23/11 23/17 23/24 31/25

**N**

number [1] 3/3
NW [1] 1/13

**O**

o'clock [1] 32/22
obligated [1] 24/22
obligation [2] 24/4 24/19
obligations [2] 22/14 22/16
obviously [12] 6/14 23/4 24/9 26/18 26/20 26/25 27/3 27/7 27/9 27/19 28/6 31/16
occur [2] 27/23 29/1
occurred [4] 7/6 8/8 8/9 17/10
October [2] 7/11 23/9
October 26th [1] 7/11
off [11] 6/21 9/21 10/22 11/14 11/18 15/8 15/11 15/14 20/9 20/13 20/24
offer [1] 14/2
offered [1] 14/19
offering [1] 5/6
Office [1] 2/8
officer [1] 3/7
official [4] 2/11 33/4 33/10 33/17
OH [1] 1/19
okay [6] 5/8 11/5 11/5 18/13
once [1] 12/13
one [7] 3/22 9/9 15/9 20/17 20/19 22/3 25/10
onerous [1] 23/2
only [17] 4/8 4/14 4/25 5/17 8/3 8/13 11/6 11/7 11/15 14/6 17/2 17/2 18/18 22/20 22/21 24/18 31/2
opens [1] 9/12
opportunity [6] 6/8 9/4 9/18 9/22 11/4 12/24
opposed [1] 17/15
opposition [2] 19/22 25/6
order [48]
orders [5] 5/19 8/17 14/7 22/3 26/22
other [14] 4/2 6/24 7/3 7/12 11/15 14/25 15/15 17/19 20/1 22/3 25/10 25/20 26/25 29/22
others [2] 21/17 23/25
otherwise [1] 9/5
our [7] 9/14 12/5 13/4 16/1 20/17 22/23 31/19
ourselves [1] 9/15 9/17
out [8] 7/3 7/12 7/12 7/18 17/19 23/2 24/7 24/8
over [2] 11/20 12/23
Overton [3] 19/13 19/20 24/20
own [5] 5/12 6/21 10/22 19/19 20/8
oxycodone [3] 11/10 11/21 13/23

**P**

P.C [1] 1/15
p.m [5] 10/14 12/8 26/14 26/15 33/2
page [1] 25/21
pages [1] 33/9
papers [5] 12/16 12/17 12/18 12/19 12/22
paragraph [2] 21/11 25/21
paragraphs [1] 21/12
Park [2] 19/20 24/20
part [8] 8/14 8/24 9/1 12/22 21/16 22/1 25/17 28/2
particular [1] 20/19
parties [1] 28/23
party [4] 6/8 17/23 18/5 28/16
past [1] 27/16
Pending [2] 18/22 18/23
Pennsylvania [1] 1/13
people [1] 10/16

percent [2] 11/20 11/23
period [3] 29/9 30/3 31/31/21
permit [5] 9/16 9/4 8/13 14/21 19/24
pertinent [1] 25/17
pharmaceutical [4] 26/19 27/5 27/23 29/1
pharmaceuticals [1] 27/3
pharmacies [3] 13/12 20/14 22/7
PHELPS [2] 1/15 3/8
place [6] 1/18 6/13 22/5 27/17 27/21 30/4
plaintiff [6] 1/3 1/12 26/25 29/24 31/11 32/13
plaintiff's [4] 13/6 26/2 29/22 31/9
plaintiffs [5] 5/1 16/16
pleading [3] 5/22 20/20 24/6
please [1] 3/3
point [13] 4/7 5/25 6/1 10/20 13/7 15/16 18/17 19/9 19/11 22/23 28/13 29/2 30/17
points [1] 16/5
policy [1] 20/23
position [8] 9/5 9/18 18/5 21/25 23/1 23/1 24/15 30/14
post [6] 9/13 10/13 15/2 19/16 21/22 23/24
post-hoc [3] 10/13 19/16 21/22
potential [1] 26/23
practice [1] 20/17
predicate [3] 27/7 28/10 29/13
preliminary [2] 3/18 32/2
prepared [1] 16/2
prescriptions [1] 11/19
present [10] 9/4 16/24 17/24 18/6 18/8 22/10 23/13 26/16 29/25 31/10
presented [10] 3/16 3/20 5/1 8/19 8/21 21/9 24/14 30/11 31/6 31/17
presents [1] 10/3
press [2] 15/20 16/3
prevent [1] 25/25
previously [2] 3/16 29/10
principals [1] 20/3
prior [1] 17/10
problem [3] 11/17 15/11 26/19
problems [2] 13/20 15/8
proceeding [2] 5/21 12/25
proceedings [5] 2/17 5/4 33/1 33/7 33/10
process [21] 9/13 9/16 9/17 10/20 11/25 12/2 13/1 14/15 15/5 15/10 15/12 20/10 20/12 20/25 23/13 23/16 24/1 24/4 27/4 27/6 28/5
produced [1] 2/17
promised [1] 8/1
proper [1] 25/4
properly [1] 18/3
property [1] 27/2
proposition [4] 4/17 18/2 20/11 28/13
propriety [1] 18/4
prospective [2] 29/23 30/19
protect [1] 26/5
protected [1] 27/1
provide [6] 4/15 16/25 20/12 27/25 28/16 29/11
provided [1] 14/8
provides [1] 10/6
providing [1] 6/7 24/3
provision [5] 5/19 6/3 14/9 14/10 18/24
provisions [1] 25/22
prudent [1] 30/23
public [4] 6/5 6/19 10/3 19/3 19/5 19/7 22/18 23/5 23/17 25/19 26/5 26/24 28/3
pull [1] 12/22
purported [1] 22/1
purportedly [1] 4/2

purpose [2] 5/6 29/4
purposes [1] 22/10
pursuant [1] 13/17
put [2] 23/12 24/15

**Q**

quantities [1] 11/10
question [3] 11/13 15/13 16/19
questions [1] 15/15

**R**

raise [1] 3/22
Randolph [2] 1/12 3/5
Rannazzisi [4] 14/19 16/4 21/11 21/17
Rannazzisi's [3] 5/7 14/2 16/18
rationale [1] 13/4
rationales [1] 24/10
rationalization [2] 9/14 21/22
rationalizations [2] 10/13 19/16
reach [1] 28/7
read [2] 12/15 14/9
really [5] 4/24 10/19 21/21 27/13 27/25
reason [4] 12/11 12/11 15/9 15/9
reasonable [2] 27/3 30/24
reasons [1] 24/5
rebuffed [1] 9/22
rebut [1] 16/24
recall [1] 17/22
receive [1] 20/18
received [1] 7/25
recent [1] 13/15
recess [1] 26/14
recitation [3] 4/17 4/20 26/8
recommend [1] 21/13
recommendation [1] 23/25
recommendations [1] 10/16
record [35]
recorded [1] 2/17
Reeves [2] 2/2 3/12
reference [3] 8/25 22/7 27/16
references [2] 13/8 14/1
refused [1] 18/7
regard [1] 26/9
regarding [5] 6/4 17/10 19/3 25/19 30/4
REGGIE [1] 1/9
Registration [3] 18/21 18/22 18/23
regs [1] 18/18
regulation [6] 4/18 5/15 5/16 6/2 25/11 25/16
regulations [7] 4/19 10/9 10/22 12/6 18/20 19/19 26/7
regulatory [1] 14/9
reiterating [1] 7/17
relates [3] 17/9 17/14 27/20
relevant [6] 4/4 5/3 5/10 7/5 7/10 22/9
relied [1] 26/9
relief [1] 28/17
relies [1] 18/18
rely [4] 4/18 16/10 19/15 19/21
remain [1] 32/6
remainder [1] 17/6
remand [3] 24/24 29/10 30/23
remedy [1] 25/4
repeatedly [1] 9/18
reported [1] 33/6
Reporter [4] 2/11 2/11 33/4 33/17
represented [1] 15/7
requested [1] 9/18
require [2] 12/6 28/24
required [4] 14/5 22/4 25/1 28/14
requires [6] 4/19 13/10 18/19 25/12 26/8 27/8
respect [9] 11/12 19/4 19/7 19/8 19/24 20/13 20/18 22/21 22/22
respond [1] 12/24

## R

**responded [1]** 11/13
**response [2]** 5/8 19/25
**restraining [3]** 3/17 29/10 30/7
**restricted [1]** 4/23
**restriction [1]** 26/23
**restrictions [1]** 27/4
**result [3]** 20/24 22/2 22/4
**resuming [1]** 26/14
**retailer [1]** 15/10
**retailers [1]** 13/22
**review [4]** 6/16 19/11 24/13 29/3
**reviewing [1]** 19/13
**Revocation [1]** 18/21
**right [3]** 8/6 14/11 27/2
**rise [1]** 10/7
**risk [4]** 7/18 10/3 21/21 23/16
**road [1]** 14/15
**Room [1]** 2/12
**RPR [2]** 2/11 33/16
**rule [4]** 12/11 16/8 25/1 25/1
**ruling [1]** 31/14
**runs [1]** 13/24
**Ruth [1]** 21/15

## S

**safety [8]** 6/5 6/19 19/3 19/5 19/7 23/17 25/19 26/5
**said [8]** 7/2 7/12 9/24 11/16 15/6 19/10 30/6 33/10
**sales [5]** 8/2 8/9 11/16 11/20 20/14
**same [1]** 23/10
**say [4]** 5/16 5/19 8/11 9/13 10/2 12/1 12/5 12/10 13/4 17/3 17/7 20/8 20/9 21/3 21/5 21/6 21/7 21/10 22/6 22/8 24/6
**saying [4]** 4/8 8/22 17/23 23/16
**says [22]** 5/13 5/16 10/15 16/9 17/10 18/17 18/24 19/14 19/20 20/6 21/15 22/9 22/10 22/17 24/4 24/21 24/25 25/12 25/21 27/20 29/24 30/2
**second [3]** 19/9 24/13 30/21
**section [6]** 6/2 18/18 18/19 18/20 18/23 19/1
**see [1]** 3/22
**seek [1]** 16/24 16/24 28/17
**seeking [1]** 21/6
**seems [4]** 27/18 28/4 28/6 31/2
**selling [2]** 7/19 10/1
**sense [3]** 5/22 6/6 8/10
**sent [2]** 7/2 7/17
**separate [2]** 6/1 18/20
**September [1]** 22/11
**September 30th [1]** 22/11
**serious [3]** 11/13 26/17 26/18
**serve [2]** 12/8 18/25
**served [5]** 6/22 7/1 9/23 10/14 23/9
**set [4]** 19/19 25/4 25/12 31/25
**setting [1]** 31/4
**settled [1]** 6/17
**several [4]** 4/22 22/2 32/17
**shall [3]** 18/25 19/2 25/18
**she [11]** 4/5 14/18 17/18 18/12 18/25 29/14 29/17 29/17 30/13 31/4 31/5
**short [1]** 26/13
**shorthand [3]** 2/17 33/7 33/11
**should [13]** 4/2 5/19 9/21 12/10 16/10 17/16 19/11 21/3 23/18 23/19 23/19 23/20 31/18
**shouldn't [1]** 14/9
**show [7]** 5/20 9/7 14/7 18/8 18/19 19/1 30/1
**showing [1]** 6/11
**shown [1]** 9/9
**shows [1]** 20/17
**side [1]** 30/4
**significance [1]** 9/23
**significant [2]** 23/4 27/1
**simple [1]** 9/9
**simply [6]** 4/18 14/13 17/7 17/12 20/2 26/6
**since [4]** 28/15 31/20 32/11 32/14
**site [1]** 6/20
**situation [3]** 9/15 17/23 23/6
**situations [1]** 16/9
**skim [1]** 17/2
**so [24]** 4/8 4/25 6/9 9/8 13/15 14/14 15/12 18/25 21/18 21/21 23/22 23/17 23/19 23/20 24/5 24/20 28/8 29/2 29/8 29/15 30/6 30/18 31/5 32/9
**solely [1]** 28/21
**some [7]** 16/11 17/2 17/3 17/9 19/12 28/9 29/7
**somebody [2]** 9/21 23/15
**someone [2]** 20/22 20/24
**something [7]** 7/8 8/19 31/6
**somewhat [1]** 11/2 19/23 24/23
**soon [3]** 7/23 7/25 11/16
**sorry [1]** 7/9
**sort [3]** 12/1 21/4 21/21
**sought [3]** 17/23 29/25 31/10
**sound [1]** 14/6
**specific [1]** 26/3
**specifically [1]** 27/25
**specify [1]** 31/18
**speculation [1]** 29/7
**Springfield [1]** 2/9
**square [1]** 23/18
**stack [3]** 12/8 21/8 23/12
**stand [3]** 5/11 11/8 12/12
**stands [3]** 18/1 20/6 25/15
**Stanford [1]** 6/24
**state [5]** 10/11 10/22 19/9 20/4 20/15
**stated [1]** 16/6
**statement [3]** 6/4 19/2 25/18
**states [5]** 1/1 1/10 5/14 6/3 33/5
**statute [5]** 14/9 9/17 11/25 26/7 28/15
**step [1]** 23/15
**still [1]** 5/2
**stop [3]** 7/14 7/19 9/25
**stopped [1]** 8/2
**stopping [1]** 8/9
**store [3]** 7/12 12/1 20/19
**stores [28]** 6/20 6/21 6/24 6/24 6/25 7/3 7/3 7/12 7/15 7/20 7/24 8/2 8/9 8/12 9/11 10/1 10/3 11/9 11/14 11/15 11/17 11/19 11/22 13/16 13/23 19/8 22/22 22/23
**strange [1]** 21/4
**Street [1]** 1/16
**strenuously [1]** 12/16
**striking [1]** 12/16
**stuck [1]** 25/14
**submission [1]** 31/14
**submissions [1]** 31/19
**submit [6]** 6/16 21/4 23/14 32/10 32/13 32/17
**submitted [1]** 29/4
**subscribed [1]** 33/12
**Subsection [1]** 18/24
**substance [1]** 11/11
**substances [5]** 7/14 13/18 26/19 27/23 29/1
**sufficient [2]** 12/3 26/11
**suggest [1]** 6/13
**suggesting [1]** 26/3
**Suite [1]** 1/16
**summary [3]** 4/15 5/17 18/19
**supplier [2]** 13/17 13/20
**support [1]** 21/6
**supported [1]** 25/2
**supporting [1]** 21/5
**supports [2]** 4/3 26/4
**suspend [2]** 11/15 13/2
**suspended [1]** 9/12
**suspends [1]** 18/25
**suspension [12]** 5/11 5/24 9/23 13/21 13/22 14/12 15/12 16/20 18/21 18/22 19/2 25/18
**suspensions [1]** 14/8
**sustain [2]** 12/4 22/24
**sustained [1]** 21/24

## T

**table [1]** 3/12
**take [3]** 23/3 23/14 26/13
**taken [6]** 4/3 18/8 22/6 26/14 27/6 27/10
**takes [1]** 18/5
**taking [4]** 6/13 10/21 12/4 27/17
**talk [2]** 9/20 14/16
**talking [1]** 26/17 28/1 28/3
**talks [1]** 13/15
**tell [10]** 7/2 7/4 7/13 7/17 9/14 9/20 12/9 15/7 15/13 20/6
**tells [1]** 15/10
**temporary [3]** 3/17 29/9 30/7
**ten [3]** 31/7 31/20 32/1
**tenants [1]** 10/4
**term [1]** 27/24
**terminated [1]** 9/12
**testimony [12]** 3/20 5/7 14/3 14/19 14/21 15/19 16/3 16/11 16/18 19/24 20/2 33/7
**than [4]** 11/22 17/19 26/11 28/15
**Thank [7]** 25/8 25/9 26/13 31/13 32/4 32/8 32/25
**that [280]**
**that's [14]** 4/8 7/18 8/16 9/2 14/7 14/13 14/16 15/11 15/12 17/14 22/23 24/1 25/4 32/15
**their [12]** 9/5 13/3 19/17 19/18 19/19 19/22 20/20 21/25 23/2 24/4 24/5 27/5
**theirs [1]** 32/14
**them [9]** 9/20 12/3 17/2 17/3 17/3 23/16 24/10 26/11 31/20
**then [23]** 7/16 9/3 9/13 9/22 10/23 11/7 12/5 13/3 19/18 19/21 20/5 20/8 21/15 22/13 22/17 22/20 30/9 30/14 31/8 31/16 31/24 31/25 32/4
**there [27]** 4/18 4/24 6/13 7/3 7/3 7/12 7/13 7/18 9/20 11/9 12/17 19/20 21/25 22/2 22/5 26/3 26/6 27/4 27/18 27/21 28/9 28/14 28/19 28/24 29/18 29/19 31/5
**there's [9]** 6/1 7/12 7/18 11/13 11/17 12/10 18/20 21/21 28/2
**therefore [4]** 18/7 24/23 25/14 29/19
**Thereupon [2]** 26/14 33/1
**these [13]** 5/4 9/11 11/17 13/12 13/16 16/9 19/25 22/7 24/22 25/6 26/22 27/16 29/1
**they [50]**
**they're [3]** 12/20 12/20 28/3
**thing [8]** 4/8 4/25 7/17 21/3 28/12 29/3 29/8 30/23
**things [2]** 22/3 30/4
**think [26]** 6/15 7/7 7/18 8/7 8/23 9/2 9/8 9/9 11/12 12/9 12/23 17/16 17/19 18/16 24/2 26/10 28/8 28/12 28/14 29/6 29/7 29/23 30/20 30/21 30/22 31/20
**Thirteenth [1]** 1/16
**this [60]**
**those [27]** 5/20 6/21 6/25 7/15 7/19 7/24 8/2 8/9 10/1 10/3 10/24 11/6 11/11

## T

those... [14] 11/12 11/14 11/19 11/22
12/16 12/17 16/16 17/1 19/21 22/6
22/21 22/22 22/23 28/8
though [1] 12/5
thought [6] 15/20 15/22 16/3 16/6 16/13
16/17
thread [1] 13/24
three [2] 11/21 25/21
through [1] 12/16
throughout [1] 20/15
time [9] 5/25 6/1 9/6 14/18 17/18 29/9
29/17 30/24 31/18
today [5] 3/6 10/2 14/17 15/22 15/22
together [2] 12/23 23/12
told [3] 8/20 13/5 21/1
took [1] 30/4
totality [1] 22/15
track [1] 13/20
transcribed [1] 33/11
transcript [3] 1/8 2/17 33/10
transcription [1] 2/17
tried [1] 18/6
TRO [3] 15/22 15/24 32/5
true [2] 7/22 8/8
truly [1] 23/15
try [3] 17/23 30/20 31/10
trying [2] 12/19 29/5
turn [1] 23/18
two [8] 6/20 6/24 6/24 7/24 10/1 11/14
11/15 32/22
two o'clock [1] 32/22
types [2] 16/9 26/22

## U

U.S [3] 2/3 2/7 2/12
ultimately [1] 9/16
uncontested [1] 9/10
under [5] 15/20 16/3 17/20 19/19 30/21
underlying [1] 20/11
undermine [1] 10/4
understand [4] 4/21 8/18 8/22 26/2
understanding [1] 27/15
undertaken [1] 22/15
unfair [1] 18/7
unfetters [1] 10/19
UNITED [4] 1/1 1/10 5/14 33/5
unless [1] 32/12
until [3] 30/7 32/5 32/6
up [4] 9/12 14/11 20/6 24/10
upon [5] 16/10 22/14 25/15 27/11 28/21
us [10] 7/2 7/4 7/13 7/18 9/13 9/20 9/23
12/6 15/7 18/7
use [1] 16/11

## V

VA [1] 2/9
vacation [1] 16/15
validity [1] 10/7
versus [2] 3/2 17/21
very [4] 11/10 15/9 26/17 30/20
view [1] 24/11
violate [1] 20/25
violated [2] 15/1 25/22
violation [1] 14/4
violations [3] 13/9 14/1 27/16
voluminous [3] 10/15 16/15 16/16

## W

WALTON [2] 1/9 4/4
want [5] 3/22 12/1 14/2 14/16 21/8
wanted [1] 9/19
wants [1] 23/14
warrant [3] 6/23 7/1 23/10

was [59]
Washington [5] 1/5 1/14 1/16 2/5 2/13
wasn't [2] 18/3 25/13
way [6] 6/6 8/5 9/4 13/1 14/13 24/1
we [70]
we'll [4] 24/6 24/7 30/9 31/25
we're [7] 10/24 11/5 11/5 12/7 20/9
24/23 28/1
we've [3] 9/24 12/21 26/9
week [3] 16/15 32/18 32/18
weekend [1] 12/23
well [61] 3/18 8/7 11/25 12/5 13/4 15/8
15/11 15/25 17/9 18/11 32/11
were [19] 4/9 6/12 7/24 8/20 9/6 9/11
9/12 9/21 9/22 10/17 11/3 11/19 12/22
13/10 15/23 21/16 22/6 25/1 30/1
what [61]
what's [4] 4/7 6/10 12/13 25/15
whatever [2] 14/22 29/15
whatsoever [1] 13/12
when [10] 4/25 5/23 11/5 12/15 16/21
18/4 19/15 26/20 31/19 32/1
where [13] 5/21 6/6 10/5 10/20 10/20
13/1 13/19 17/23 20/22 23/8 24/14
24/15 24/18
whereof [1] 33/12
whether [16] 3/19 3/24 4/9 14/21 16/19
19/24 25/14 27/9 28/1 28/3 28/19 29/20
30/11 30/15 30/18 30/25
which [28] 3/22 4/6 5/6 6/14 9/9 9/18
11/7 11/9 12/9 12/16 12/21 13/9 18/18
18/20 19/2 20/2 20/11 20/12 23/4 23/7
24/2 25/12 26/21 28/23 29/7 30/13
30/19 31/11
who [8] 7/4 7/13 10/16 12/19 15/7 15/14
20/6 21/9
whose [1] 11/19
why [12] 6/10 9/7 13/6 13/25 14/2 14/18
15/13 15/17 15/18 24/10 24/13 26/21
will [14] 3/19 7/14 7/19 9/21 14/15 14/24
29/15 30/3 30/6 30/10 30/14 32/6 32/16
32/16
willingness [1] 8/11
WILMER [2] 1/13 3/8
win [1] 12/19
within [3] 24/13 31/7 31/21
without [6] 6/7 15/12 16/3 24/3 27/6
28/7
witness [3] 3/20 33/12
word [2] 7/22 7/25
work [3] 14/11 14/13 23/20
working [1] 32/16
works [1] 24/2
world [1] 12/2
worst [1] 13/19
would [41]
wouldn't [1] 15/17
wrong [1] 12/23
wrote [1] 7/11

## Y

years [1] 20/21
yes [6] 4/13 11/16 31/16 31/23 32/7
32/21
you [27] 7/3 7/13 7/18 8/4 8/11 8/23
9/14 11/24 12/8 12/9 12/15 12/21 13/2
14/9 17/14 22/23 24/23 25/2 25/3 25/8
25/9 26/13 31/13 32/4 32/8 32/15 32/25
you're [2] 4/8 5/23
your [51]
yourself [1] 3/4